(Doc. No. 9)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                                                :
JOHN STEPHENSON and TRACY LEE,   :
*in their own right and on behalf of all others* :
*similarly situated*                                          :
                                                                :
                           Plaintiffs,           :    Civil No. 13-721-(RBK/KMW)
                                                                :    Master Dkt. No. 13-784
                   v.                                         :
                                                                :    **OPINION**
                                                                :
CONSOLIDATED RAIL CORPORATION, :
et al.,                                                       :
                           Defendants.        :
_____  :

**KUGLER,** United States District Judge:

This matter comes before the Court upon the motion of John Stephenson and Tracey Lee ("Plaintiffs"), on behalf of themselves and others similarly situated, to remand this matter to the Superior Court of New Jersey, Gloucester County. Consolidated Rail Corporation and Norfolk Southern Railway Company ("Defendants") oppose Plaintiffs' motion, arguing that they have demonstrated to a legal certainty that the amount in controversy exceeds the Class Action Fairness Act's ("CAFA") jurisdictional threshold of five million dollars. Because the Court finds that Defendants have satisfied CAFA's threshold requirements, the Court will deny Plaintiffs' motion.

I.     BACKGROUND

On November 30, 2012, a train owned and operated by Defendants derailed as it crossed a bridge spanning Mantua Creek in Paulsboro, NJ. At or about the same time, the bridge, which

1

Defendants also owned and operated, collapsed. Compl. ¶¶13-15. The derailment caused the release of "huge quantities of vinyl chloride and/or other toxic and dangerous and ultrahazardous substances." Compl. ¶29. Due to the chemical spill, approximately 700 individuals were forced to evacuate for eight days; a "shelter in place" order was mandated for the entire population of Paulsboro, NJ for three days. Notice of Removal ¶¶ 18 & 19. Some residents of West Deptford, NJ were also ordered to "shelter in place." Def. Opposition Brief, 6.

On the basis of these events, Plaintiffs filed suit in the Superior Court of New Jersey, Gloucester County. In the complaint, filed on December 27, 2012, Plaintiffs asserted claims based on Defendants' alleged negligence, nuisance, trespass, and strict liability. Plaintiffs also sought punitive damages due to Defendants' "outrageous, willful, reckless actions and their wanton disregard for the health of plaintiff and the Class." Compl. ¶81. Plaintiffs brought the action on behalf of themselves and two sub-classes: 1) "all persons residing in the County of Gloucester, New Jersey who evacuated their place of residence in the County of Gloucester, as a result of the train derailment and chemical leak" and 2) "all persons residing in the County of Gloucester, New Jersey, who had income loss of less than $75,000 per person, and all business entities physically located in the County of Gloucester, New Jersey (and which were, if incorporated, incorporated in the State of New Jersey) which had income loss of less than $75,000 per entity." Compl. ¶31.

On February 5, 2013, Defendants removed the matter to federal court pursuant to CAFA, 28 U.S.C. § 1332(d)(2). Plaintiffs responded by filing the instant remand motion, arguing that Defendants have not established that Plaintiffs' claims satisfy CAFA's five million dollar amount in controversy requirement.

## II. LEGAL STANDARD

The Third Circuit has provided a framework for district courts to determine whether a removed case should be remanded because the amount in controversy allegedly fails to meet the statutory threshold.[1] See Frederico v. Home Depot, 507 F.3d 188, 196 (3d Cir.2007). As a preliminary matter, if there is a jurisdictional dispute regarding factual matters, the party asserting federal jurisdiction bears the burden of proving the necessary facts by a preponderance of the evidence. Id. at 194 (citing McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178 (1936)).

If the relevant jurisdictional facts are not in dispute, or the court is satisfied with the sufficiency of the jurisdictional proof, the analysis turns to whether the jurisdictional amount is met to a "legal certainty." Frederico, 507 F.3d at 196. The "legal certainty" standard is somewhat amorphous, but is generally considered to require something less than "absolute certainty," Nationwide Mut. Ins. Co. v. Brown, 387 F.Supp.2d 497, 498 (W.D.Pa.2005) (quoting Nelson v. Keefer, 451 F.2d 289, n. 6 (3d Cir.1971)), but "more stringent" than a preponderance of the evidence. Hayfield v. Home Depot U.S.A., Inc., 168 F.Supp.2d 436 n. 12 (E.D.Pa.2001) (noting that the preponderance of the evidence standard is "more lenient and easily understood" than the "legal certainty" test) (citing Johnson v. Costco Wholesale, 1999 WL 740690 (E.D.Pa.1999)).

The legal certainty test may be satisfied through two avenues. If the complaint "*specifically avers that the amount sought is less than the jurisdictional minimum. . . a defendant seeking*

---

[1] Plaintiffs do not dispute that there is diversity of citizenship as Plaintiffs are residents of New Jersey and Defendants are both incorporated and have their principal places of business in Pennsylvania and Virginia, respectively. Notice of Removal ¶11. Therefore, the Court will only address whether CAFA's five million dollar statutory threshold is met.

3

removal must prove to a legal certainty that [the] plaintiff *can* recover the jurisdictional amount." [2] Id. at 196–97 (emphasis added) (relying on Morgan v. Gay, 471 F.3d 469 (3d Cir.2006)). Alternatively, if the "plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum," then "the case must be remanded if it appears to a legal certainty that the plaintiff *cannot* recover the jurisdictional amount." Id. at 197 (emphasis in original) (relying on Samuel–Bassett v. KIA Motors Am., Inc., 357 F.3d 392 (3d Cir.2004)).

### III.   DISCUSSION

Defendants aggregated the individual claims for which Plaintiffs seek compensation and determined that the amount in controversy satisfied the statutory threshold. In order to calculate this figure, Defendants considered alleged business income loss, losses to residents, punitive damages, and attorney's fees.

Plaintiffs challenge this calculation and argue that Defendants have not established that Plaintiffs can recover the jurisdictional threshold of five million dollars to a legal certainty. Plaintiffs first note long established law that removal statutes are to be strictly construed against removal that all doubts should be resolved in favor of remand. Pl.'s Br. Opp'n at 3. Plaintiffs then challenge Defendants' figures on numerous grounds that vary in gloss, but reduce to an argument that Defendants have only proven that "it is theoretically possible for Plaintiffs to be awarded more than $5 million." Pl. Repl. at 5. Plainitffs also note that Defendants have not

---

[2] In the wake of the recent Supreme Court decision, Standard Fire Insurance Co. v. Knowles., 133 S. Ct. 1345 (2013), this distinction may no longer be relevant. In Standard Fire Insurance Co., the United States Supreme Court unanimously held that a plaintiff's pre-certification stipulation that the class would not seek damages in excess of five million dollars total did not prevent removal under CAFA. Id. at 1350-51. Instead, the district court must aggregate the claims of the individual class members, pursuant to 28 U.S.C. §1332(d)(6). Whether this decision alters the burden of proof in Frederico's legal certainty analysis remains uncertain. However, the Court need not decide this question because Defendants have established to a legal certainty that plaintiff can recover the jurisdictional amount.

4

mentioned the number of settled claims or factored in reimbursements, which could potentially reduce Plaintiffs' actual award. Plaintiffs finally assert that Defendants wrongly included both damages for "loss of use" and "discomfort and annoyance," which Plaintiffs did not specifically seek in the complaint, and attorney's fees. The Court will evaluate each portion of Defendants' calculation separately while also addressing Plaintiffs' arguments.[3]

1. *Business Income Loss*

Plaintiffs' potential class includes all businesses in Gloucester County that experienced income loss of less than $75,000. Using sales records and business listing data, Defendants conservatively estimated that the business income loss claims in this case from solely businesses in Paulsboro would be $1,480,768. Notice of Removal ¶29. This analysis was based on the number of days of the evacuation orders and the number of businesses in Paulsboro. Id. ¶¶ 22-28. Defendants attempted to eliminate duplicative entries and business that might have claims above $75,000. Id. Plaintiffs challenge Defendants' calculation primarily on two grounds: 1) Plaintiffs argue that Defendants' erroneously factored in "sales," as opposed to "net income" for the relevant businesses, and 2) that Defendants unreasonably calculated lost business income based on a 100% loss of sales. The Court will begin by addressing these two arguments.

Plaintiffs first contend that Defendants' business income loss numbers are inappropriate because they account for lost "sales" and not lost "net income." Mot. Remand at 7-9. Plaintiffs are correct that *sales* refer to the gross receipts of a business, while *net income* involves

---

[3] When determining whether the amount in controversy is satisfied, the Court must first decide if the parties dispute the relevant jurisdictional facts. See Frederico, 507 F.3d at 196 (citing Samuel-Bassett, 357 F.3d at 398). Here, the parties do not dispute the relevant jurisdictional facts, at least for the purposes of this motion. Plaintiffs challenge Defendants' ability to satisfy the legal certainty test while relying on generalized data, yet there is no challenge as to the factual accuracy of the data presented by Defendants. Therefore, the Court may proceed to the second step of the analysis, which requires the aggregation of claims to determine whether the amount in controversy requirement is satisfied.

"deducting operating expenses and taxes from gross receipts." BLACK'S LAW DICTIONARY 763-64 (6th ed. 1990). However, Plaintiffs' complaint specifically stated members of the second sub-class lost i*ncome*, not *net income*, thus undermining their argument. Compl. ¶36 ("The claims of Class Representatives are typical of the claims of the Class in that the named representatives . . . had *income* loss as a result of the train derailment and chemical leak.") Income is analogous to *sales* as it is defined as, "[t]hat which comes in or is received from any business, or investment of capital, without references to outgoing expenditures." BLACK'S LAW DICTIONARY at 763. Plaintiffs cannot now constructively amend their complaint to avoid federal subject matter jurisdiction. Defendants may rely on sales figures to reach the jurisdictional threshold.

Plaintiffs also dispute Defendants' calculation of business income loss figures because of the percentage of lost sales. Plaintiff argues that Defendants' numbers are based on a 100% loss of sales and that Defendants should have identified a more realistic percentage for lost sales. Pl. Mot. Remand at 7-8. Acknowledging that Defendants used conservative numbers to calculate their business income loss figure,[4] the Court will still decline to aggregate the claims based on a 100% loss of sales and will instead adopt 25% as the appropriate figure.[5] This would bring the business loss claim to $370,192, a conservative figure that is supported to a legal certainty.

    a. Resident Income Loss

Plaintiffs similarly seek compensation for the income that Gloucester County residents lost as a result of the train derailment. In order to quantify those damages, Defendants used census data from Paulsboro on the number of residents, number of households, and the median

---

[4] Defendant used only businesses in a very narrow income band and only business in Paulsboro despite the fact that Plaintiffs proposed class incudes businesses in all of Gloucester County.

[5] Plaintiff provided evidence that some business owners lost 25% in sales. Notice of Removal, Ex. I.

household income to develop a figure for potential loss of resident income of $492,159. Notice of Removal, ¶¶ 31-33. In developing this figure, Defendants accounted for the fact that residents received evacuation orders and shelter in place orders of varying lengths. Id. Defendants' figure also excluded the potential claims from residents of Gloucester County that lived outside of Paulsboro. The Court finds that the potential claim for $492,159 in lost income for Paulsboro residents is supported to a legal certainty.

Plaintiffs challenge Defendants' quantification of the loss experienced by members of the residential sub-class because Defendants included damages for loss of use and discomfort and annoyance, which Plaintiffs did not seek. However, the Court finds that Defendants' calculation is appropriate. Plaintiffs seek compensation for Defendants' alleged nuisance and trespass in the second and third counts of their complaint. Compl. ¶¶ 48-57. In their "prayer for relief," Plaintiffs specifically request "any and all damages available by statute or common law available under any of the Counts of this Class Action Complaint." Under New Jersey law, a claimant asserting a cause of action for nuisance or trespass can seek three different categories of compensation: diminution of property value, loss of use, and discomfort and annoyance. Ayers v. Jackson Twp., 525 A.2d 287, 294 (N.J. 1987) (citing the Restatement (Second) of Torts § 929). There is no reason for the Court to exclude these numbers when determining the amount in controversy. 133 S. Ct. 1345. Therefore, Defendants were correct to include those figures when calculating the total resident income loss.

Defendants calculate a potential award of $37,149 for loss of use. The Court finds that this figure, which is based on the median monthly gross rent for Paulsboro, has been proven to a legal certainty. To quantify discomfort and annoyance, Defendants proposed a figure of $56 per day in damages per person. This number derives from Ayers v. Jackson Twp., a New Jersey

7

state court case in which where the jury awarded $56 a day to plaintiffs who had been deprived of running water. 525 A.2d at 291. The Court considers this number an appropriate estimate of the potential recovery in this case. Therefore, Defendant's figure of $1,026,984 is supported to a legal certainty.[6]

    b. <u>Punitive Damages</u>

Plaintiffs are also seeking punitive damages in this case. New Jersey law allows for punitive damages per claim of up to five times the amount of compensatory damages. N.J.A. 2A:15-5.14(b). Despite Plaintiffs' contentions otherwise, the Court should consider punitive damages when calculating the amount in controversy. See <u>Frederico</u>, 507 F.3d at 199 (stating that punitive damages must be considered in determining the amount in controversy), <u>but</u> <u>see</u> <u>Morgan</u>, 471 F.3d at 475 (holding that consideration of punitive damages to satisfy amount in controversy threshold is inappropriate when the defendant failed to prove the underlying compensatory damages). Defendants have proven the underlying compensatory damages to a legal certainty and only petition the Court to employ a figure of double the amount of compensatory damages to represent the potential punitive damages in this case. The Court will accept this request. Using the figures above that were proven to a legal certainty, the punitive damages in this case would be $3,852,968.[7]

    c. <u>Attorney's Fees</u>

---

[6] This figure is based on the $56 a day multiplied by the population of Paulsboro, multiplied by the three days that the shelter in place order was given.

[7] This figure represents the sum of $370,192 (business losses), $492,159 (losses to residents), $37,149 (loss of use), and $1,026,984 (discomfort and annoyance) multiplied by 2.

Finally, Plaintiffs seek attorney fees. The Court must consider these potential fees in the amount in controversy calculation. <u>Frederico</u>, 507 F.3d at 199. Fees can be as much as thirty percent of the judgment. <u>Id.</u> Based on this case, thirty percent of the judgment would be an additional $1,733,856.[8]

Taking into account the income loss of businesses and residents, punitive damages, and attorney's fees, the Court finds that Defendants have satisfied CAFA's jurisdictional threshold of five million dollars. The Court has reached this finding by considering the below calculation.

| | |
|---|---|
| <u>Business Income Loss</u> | $370, 192 |
| <u>Residents Income Loss</u> | $492, 159 |
| <u>Loss of Use</u> | $37, 149 |
| <u>Discomfort & Annoyance</u> | $1,026,984 |
| <u>Punitive Damages</u> | $3,852,968 |
| <u>Attorney's Fees</u> | $1,733,836 |
| Total | $7,513,308 |

Although Plaintiffs argue that Defendants' figures, though accurate, are predicated on speculation and assumptions, this argument misconceives the nature of "legal certainty." Defendants need not demonstrate to *absolute certainty* that Plaintiffs *will* recover more than five million dollars.[9] Instead, Defendants must establish to a *legal certainty* that Plaintiffs *can* recover the jurisdictional minimum. Defendants have satisfied this burden.

---

[8] The actual total is $1,733, 835.6. However, the Court will round up to the nearest whole number.

[9] For this reason, Defendant need not provide detailed figures for the number of claims that settled since filing and for the amount of reimbursements already distributed.

**IV.     CONCLUSION**

For the foregoing reasons, Plaintiff's motion to remand is DENIED.  An appropriate order shall issue today.


Dated: 4/23/2013                                                                        /s/ Robert B. Kugler
                                                                                        ROBERT B. KUGLER
                                                                                        United States District Judge